UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

IN RE:

Patrick J. Kinnane and
Cynthia G. Kinnane,

      Debtors,
_____/

Case No.: 13-02787
Judge JOHN T. GREGG
Chapter 13

Potestivo & Associates, P.C.
By: Kenneth A. VanNorwick (P61707)
Attorney for Nationstar Mortgage, LLC
811 South Blvd. Suite 100
Rochester Hills, MI 48307
(248) 853-4400
kvannorwick@potestivolaw.com

Gregory J. Ekdahl (P67768)
Attorney for Debtors
2810 E. Beltline Lane NE
Grand Rapids, MI 49525
(616) 364-2100
ecf@kalwgr.com
_____/

## MOTION FOR MODIFICATION OF THE AUTOMATIC STAY TO ALLOW LOAN MODIFICATION AGREEMENT WITH RESPECT TO THE REAL PROPERTY LOCATED AT 1683 SHERWOOD AVE., DORR, MI 49323

Nationstar Mortgage LLC, and its Principal, Successors, Heirs and Assigns ("Movant") moves this Court, under §§§§ 361, 362, 1301 and other sections of the Bankruptcy Reform Act of 1978, as amended (the "Bankruptcy Code") and under Fed. R. Bankr. P. 4001 (a) (3), and other rules of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order Modifying the Automatic Stay imposed by § 362 of the Bankruptcy Code with respect to the Real Property Located at 1683 Sherwood Ave., Dorr, MI 49323:

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157 (b) (2). The venue of this case and this Motion is proper under 28 U.S.C. §§ 1408 and 1409.

2. On June 21, 2006, the Debtor listed above obtained a loan from Movant in the amount of $90,000.00. Such loan was evidenced by a promissory note dated June

21, 2006 (the "Note"). Debtor executed a Mortgage dated June 21, 2006 (the "Security Agreement"), conveying to Movant, a lien on the real and/or personal property (the "Collateral") owned by the Debtor, located at 1683 Sherwood Ave., Dorr, MI 49323. The lien is the first lien on the collateral.

3. The estimated value of the Collateral is $84,200.00. This valuation is based on Schedule D of the Debtor's filed bankruptcy petition.

4. Upon reasonable investigation, no other parties are known to have an interest in the Collateral.

5. The Debtor filed a Chapter 13 bankruptcy petition on April 3, 2013.

6. The Debtor filed a Chapter 13 Plan on April 17, 2013, which was confirmed on October 4, 2013.

7. Movant, at the Debtors' request, offered a loan modification agreement to the Debtors.

8. The Loan Modification will allow the Debtors to retain the property.

9. Movant would like to implement the terms of the agreed upon loan modification agreement listed, but is prevented from doing so by 11 U.S.C. § 362 (a).

10. Concurrence of opposing counsel for the relief requested was not sought, due to the time sensitive nature of having the modification approved by the Court.

**WHEREFORE,** Movant requests that this Honorable Court approve the Motion for Modification of the Automatic Stay to allow Loan Modification Agreement with respect to the real property located at 1683 Sherwood Ave., Dorr, MI 49323.

Dated: September 17, 2014
/s/ Kenneth A. VanNorwick
Potestivo & Associates, P.C.
By: Kenneth A. VanNorwick (P61707)
Attorney for Nationstar Mortgage LLC
811 South Blvd. Suite 100
Rochester Hills, MI 48307
(248) 853-4400
kvannorwick@potestivolaw.com

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

IN RE:

   Patrick J. Kinnane and                          Case No.: 13-02787
   Cynthia G. Kinnane,                             Judge JOHN T. GREGG
                                                          Chapter 13

      Debtors,
_____/

Potestivo & Associates, P.C.
By: Kenneth A. VanNorwick (P61707)
Attorney for Nationstar Mortgage LLC
811 South Blvd. Suite 100
Rochester Hills, MI 48307
(248) 853-4400
kvannorwick@potestivolaw.com

Gregory J. Ekdahl (P67768)
Attorney for Debtors
2810 E. Beltline Lane NE
Grand Rapids, MI 49525
(616) 364-2100
ecf@kalwgr.com
_____/

### NOTICE OF MOTION OF SECURED CREDITOR FOR MODIFICATION OF THE AUTOMATIC STAY TO ALLOW LOAN MODIFICATION AGREEMENT

      Counsel for Nationstar Mortgage LLC, and its Principal, Successors, Heirs and Assigns has filed papers with the Court to modify the automatic stay to allow loan modification agreement with respect to the real property located at 1683 Sherwood Ave., Dorr, MI 49323.

      **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

      If you do not want the court to enter an order to modify the mortgage loan, or if you want the court to consider your views on the Motion, within fourteen (14) days, you or your attorney must:

1.    File with the court a written response or an answer pursuant to F.R. Civ. P.8 (b), (c) and (e), explaining your position at:

                               United States Bankruptcy Court
                                      One Division N.W.
                                    Grand Rapids, MI 49503

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

You must also mail a copy to:

| | |
|---|---|
| Brett N. Rodgers, Trustee | Kenneth A. VanNorwick, Esq. |
| 50 Louis St., NW, Ste. 700 | 811 South Blvd., Suite 100 |
| Grand Rapids, MI 49503 | Rochester Hills, MI 48307 |

If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Dated:  September 17, 2014

/s/ *Kenneth A. VanNorwick*
Potestivo & Associates, P.C.
By:  Kenneth A. VanNorwick (P61707)
Attorney for Nationstar Mortgage LLC
811 South Blvd. Suite 100
Rochester Hills, MI 48307
(248) 853-4400
kvannorwick@potestivolaw.com

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

IN RE:

Patrick J. Kinnane and  
Cynthia G. Kinnane,

Case No.: 13-02787  
Judge JOHN T. GREGG  
Chapter 13

Debtors,

_____/

### ORDER FOR MODIFICATION OF THE AUTOMATIC STAY TO ALLOW LOAN MODIFICATION AGREEMENT WITH RESPECT TO THE REAL PROPERTY LOCATED AT 1683 SHERWOOD AVE., DORR, MI 49323

This matter came to be considered on the Motion for Modification of the Automatic Stay to Allow Loan Modification Agreement with respect to the Real Property Located at 1683 Sherwood Ave., Dorr, MI 49323 (the "Motion") filed by Nationstar Mortgage LLC, and its Principal, Successors, Heirs and Assigns ("Movant").

Movant has alleged that good cause exists for granting the Motion and that Debtors, counsel for Debtors, the Chapter 13 Trustee, and all other necessary parties were served with the Motion and with notice and opportunity to object to the Motion. No party filed a response or otherwise appeared in opposition to the Motion.

Based on this, it appears appropriate to grant the relief requested.

**IT IS THEREFORE ORDERED** that the Automatic Stay is hereby modified to allow the Loan Modification for the Real Property Located at 1683 Sherwood Ave., Dorr, MI 49323 pursuant to the terms agreed upon Loan Modification Agreement:

a. Effective May 1, 2014, the outstanding Principal Balance under the Mortgage Loan is $105,548.88 ("New Principal Balance").

b. The maturity date of the Mortgage Loan is May 1, 2054.

c. The interest rate on the Interest Bearing Principal Balance is fixed:

| Years | IR | IR Change date | P&I Pmt Amt | Est. Mo. Escrow Pmt | Total Mo. Pmt | Pmt Begins on | # of Mo. Pmts |
|---|---|---|---|---|---|---|---|
| 1-40 | 4.625% | 5/01/2014 | $483.02 | $0 | $483.02 | 6/1/2014 | 480 |

      d.      Effective June 1, 2014, Debtor's ongoing mortgage payment shall be $483.02 per month, including Principal and Interest. The payment amount shall be subject to future adjustments for changes in insurance and taxes as provided for in the mortgage and consistent with the requirements of applicable Federal and State Law.

      e.      The property securing this mortgage is located at 4256 23rd St., Wyandotte, MI 48192.

2. Effective June 1, 2014, payments pursuant to the Loan Modification approved in this Order shall be made by the Debtors directly.

3. The Mortgage Loan shall be deemed contractually current as of June 1, 2014.

4. Except as modified in this Order, the terms and conditions of the Loan and Mortgage documents between Debtors and Creditor shall remain in full force and effect.

5. Entry of this Order is without prejudice to debtor filing any further plan modification that debtor deems appropriate.

**IT IS FURTHER ORDERED** and adjudged that except as expressly modified herein, Debtors' Plan as confirmed (and as later modified, if at all) shall remain in full force and effect.

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

IN RE:

Patrick J. Kinnane and
Cynthia G. Kinnane,

    Debtors,

Case No.: 13-02787
Judge JOHN T. GREGG
Chapter 13

_____/

Potestivo & Associates, P.C.
By: Kenneth A. VanNorwick (P61707)
Attorney for Nationstar Mortgage LLC
811 South Blvd. Suite 100
Rochester Hills, MI 48307
(248) 853-4400
kvannorwick@potestivolaw.com

Gregory J. Ekdahl (P67768)
Attorney for Debtors
2810 E. Beltline Lane NE
Grand Rapids, MI 49525
(616) 364-2100
ecf@kalwgr.com

_____/

### PROOF OF SERVICE

    I, Tina Martini, state that on the <u>17th</u> day of September, 2014, I served a copy of the Motion for Modification of the Automatic Stay to Allow Loan Modification, Notice of Motion, Proposed Order for Modification of the Automatic Stay to Allow Loan Modification, and Proof of Service of same upon:

| | | |
|---|---|---|
| Gregory J. Ekdahl, Esq. | Brett N. Rodgers, Trustee | Patrick & Cynthia Kinnane |
| 2810 E. Beltline Lane NE | 50 Louis St. NW, Ste. 700 | 1683 Sherwood Ave. |
| Grand Rapids, MI 49525 | Grand Rapids, MI 49503 | Dorr, MI 49323 |

by placing same in a well sealed envelope, by first class mail, with the proper prepaid postage thereon and depositing same in a United States Mail receptacle in the City of Rochester Hills, State of Michigan to Debtors and via CM-ECF electronic filing to the Debtor's Attorney and the Trustee.

                                                    */s/ Tina Martini*
                                                  Tina Martini
                                                  Employee of Potestivo & Associates, P.C.
                                                  811 South Boulevard, Suite 100
                                                  Rochester Hills, MI 48307
                                                  (248) 853-4400
                                                  tmartini@potestivolaw.com

(Page 1 of 12)

[Space Above This Line For Recording Data]

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

**After Recording Return To:**
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067

**This Document Prepared By:**
Tatiana Vakidis
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067

Original Recording Date: July 18, 2006
Original Loan Amount: $90,000.00

Loan No: redacted
Investor Loan No: redacted
MIN Number: redacted

This Loan Modification Agreement ("Agreement"), made this 16th day of April, 2014, between **PATRICK KINNANE and CYNTHIA KINNANE** ("Borrower") and **NATIONSTAR MORTGAGE LLC**, whose address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067 ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel: redacted , ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated June 21, 2006 and recorded in Book/Liber 3010, Page 920, Instrument No: redacted of the Official Records (Name of Records) of ALLEGAN County, MI (County and State, or other Jurisdiction) and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**1683 SHERWOOD AVE, DORR, MI 49323,**
(Property Address)

the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

redacted                                                                 redacted

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **May 1, 2014**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$105,548.88**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.625%**, from **May 1, 2014**. Borrower promises to make monthly payments of principal and interest of U.S. **$483.02**, beginning on the **1st day of June, 2014**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.625% will remain in effect until principal and interest are paid in full. If on **May 1, 2054** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

redacted                                                                                                            redacted

    (b)    all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

    (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

    (f)    Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

redacted                    redacted

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the

redacted                                          redacted

(Page 5 of 12)

Property shall terminate when all the sums secured by the Security Instrument are paid in full.

(g) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the Mortgagee, of record under the Security Instrument and this Agreement. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

6. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

7. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

redacted                                                        redacted

(Page 6 of 12)

In Witness Whereof, the Lender and I have executed this Agreement.

_Patrick Kinnane_ _____ (Seal)
**PATRICK KINNANE** -Borrower

_Cynthia Kinnane_ _____ (Seal)
**CYNTHIA KINNANE** -Borrower

_____ [Space Below This Line For Acknowledgments] _____

Acknowledged before me in __Allegan__ County, Michigan, on
__April 29, 2014__

by _____

_Kristi K. Haveman_
Notary Name
__Allegan__
County
__Allegan__
Acting in County

My commission expires: __9-27-19__

KRISTI K. HAVEMAN
Notary Public, State of Michigan
County of Allegan
My Commission Expires Sep. 27, 2019
Acting in the County of Allegan

redacted                                                           redacted

## Exhibit "A"

Loan Number: redacted

Property Address: 1683 SHERWOOD AVE, DORR, MI 49323

Legal Description:

ALL THOSE CERTAIN PIECES OR PARCELS OF LAND SITUATE IN THE TOWNSHIP OF DORR, COUNTY OF ALLEGAN AND STATE OF MICHIGAN, DESCRIBED AS FOLLOWS, TO WIT: LOT NUMBER 36, LITCHFIELD DOWNS BEING IN THE WEST HALF OF THE NORTHEAST QUARTER OF SECTION 22, TOWN 4 NORTH, RANGE 12 WEST, DORR TOWNSHIP, ALLEGAN COUNTY, MICHIGAN AS RECORDED IN LIBER 10 OF PLATS, PAGES 55 AND 56, ALLEGAN COUNTY.

redacted                                                          redacted

Loan No.: redacted
Borrower: PATRICK KINNANE and CYNTHIA KINNANE

## COMPLIANCE AGREEMENT

In consideration of Nationstar Mortgage LLC ("Lender") extending funds (the "Loan"), in connection with the closing of the property located at 1683 SHERWOOD AVE, DORR, MI 49323 (the "Closing"), the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Closing. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Loan to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder. Failure to comply shall constitute default under the Note and Security Instrument that evidence the Loan, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVISE OF COUNSEL.

_Patrick Kinnane_  4-29-14
Borrower - PATRICK KINNANE  Date

_Cynthia Kinnane_  4-29-14
Borrower - CYNTHIA KINNANE  Date

redacted                                                           redacted

Loan No redacted
Borrower: PATRICK KINNANE and CYNTHIA KINNANE

## AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, PATRICK KINNANE and CYNTHIA KINNANE ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated June 21, 2006, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to

redacted                                                                    redacted

(Page 12 of 12)

Loan No.: redacted
Borrower: PATRICK KINNANE and CYNTHIA KINNANE

Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

*Patrick Kinnane*      4-29-14
Borrower - PATRICK KINNANE      Date

*Cynthia Kinnane*      4-29-14
Borrower - CYNTHIA KINNANE      Date

_____      _____
Borrower -      Date

_____      _____
Borrower -      Date

redacted                redacted